# In re Filiberto RUIZ-ROMERO, Respondent

## File A92 236 462 - El Paso

*Decided February 1, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien who is convicted of transporting an illegal alien within the United States in violation of section 274(a)(1)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1324(a)(1)(A)(ii) (1994), was convicted of an aggravated felony as defined in section 101(a)(43)(N) of the Act, 8 U.S.C. § 1101(a)(43)(N) (Supp. II 1996), and is therefore deportable under section 241(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1251(a)(2)(A)(iii) (1994), as an alien convicted of an aggravated felony. *Matter of I-M-*, 7 I&N Dec. 389 (BIA 1957), distinguished.

Albert Armendariz, Jr., Esquire, El Paso, Texas, for the respondent

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, GUENDELSBERGER, JONES, GRANT, and SCIALABBA, Board Members. Concurring Opinion: VILLAGELIU, Board Member. Dissenting Opinion: ROSENBERG, Board Member, joined by VACCA, Board Member.

GRANT, Board Member:

In a decision dated August 14, 1997, the Immigration Judge found the respondent deportable as charged, pretermitted his request for relief from deportation, and ordered him deported from the United States to Mexico. The respondent timely appealed. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent is a native and citizen of Mexico who originally entered the United States without inspection on or about December 1, 1984. On November 30, 1987, the respondent was granted temporary resident status through the legalization program. His status was subsequently adjusted to that of a lawful permanent resident on December 1, 1990.

On December 23, 1996, the Immigration and Naturalization Service

issued an Order to Show Cause and Notice of Hearing (Form I-221), alleging that the respondent had been convicted on July 31, 1996, in the United States District Court for the District of New Mexico, of the offense of transporting an illegal alien in violation of section 274(a)(1)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1324(a)(1)(A)(ii) (1994). Based on this conviction, the Service alleged that the respondent was deportable pursuant to section 241(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1251(a)(2)(A)(iii) (1994), as an alien convicted of an aggravated felony. The Immigration Judge denied the respondent's motion to terminate proceedings and found him deportable as charged. She further pretermitted his request for a waiver of inadmissibility under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), *as amended by* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 ("AEDPA"), and ordered him deported from the United States.

## II. APPELLATE ARGUMENTS

On appeal, the respondent contends that, as a matter of law, a conviction for transporting an illegal alien in violation of section 274(a)(1)(A)(ii) of the Act does not support a charge of deportability under section 241(a)(2)(A)(iii). Specifically, he contends that his crime does not relate to alien smuggling, and thus his conviction is not an aggravated felony as defined in section 101(a)(43)(N) of the Act, 8 U.S.C. § 1101(a)(43)(N) (Supp. II 1996). He therefore asserts that the Immigration Judge erred in denying his motion to terminate proceedings. In the alternative, he argues that the evidence submitted by the Service does not support a finding of his deportability.

In response, the Service concurs with the Immigration Judge's findings and urges this Board to adopt her decision.

## III. MOTION TO TERMINATE DEPORTATION PROCEEDINGS

### A. Respondent's Conviction

The Service alleged that the respondent was convicted under section 274(a)(1)(A)(ii) of the Act. At the time of the respondent's conviction, section 274(a) of the Act provided, in pertinent part, as follows:

(1)(A) Any person who—

(i) knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port

of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien;

(ii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

(iii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;

(iv) encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law,

shall be punished as provided in subparagraph (B).

. . . .

(2) Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien shall, for each transaction constituting a violation of this paragraph, regardless of the number of aliens involved—
(A) be fined in accordance with title 18, United States Code, or imprisoned not more than one year, or both . . . .

Sections 274(a)(1)(A), (2)(A) of the Act.

## B. Deportability under Section 241(a)(2)(A)(iii) of the Act

The respondent was charged with deportability as an alien convicted of an aggravated felony pursuant to section 241(a)(2)(A)(iii) of the Act. The definition of an aggravated felony is set forth at section 101(a)(43) of the Act. That section, as it applies to the respondent, defines an aggravated felony as follows:

*[A]n offense described in paragraph (1)(A) or (2) of section 274(a) (relating to alien smuggling)*, except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this Act.

Section 101(a)(43)(N) of the Act (emphasis added).
The respondent's conviction for violation of section 274(a)(1)(A)(ii) of

the Act is clearly part of section 274(a)(1)(A). The respondent argues that by including the parenthetical "relating to alien smuggling" in section 101(a)(43)(N), Congress intended to exempt certain criminal offenses described in sections 274(a)(1)(A) or (2) from the aggravated felony definition. Specifically, he contends that a conviction under section 274(a)(1)(A)(ii) does not "relat[e] to alien smuggling" because, in contrast to a conviction under sections 274(a)(1)(A)(i) or (iv), it does not relate to the entry of an alien who crosses the border of the United States. The threshold question, then, is what effect, if any, is to be given to the "relating to alien smuggling" parenthetical in section 101(a)(43)(N).

Our starting point of analysis is to examine the plain language of section 101(a)(43)(N) of the Act. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12 (1987) (noting that there is a "strong presumption that Congress expresses its intent through the language it chooses"). We disagree with the respondent's view that the parenthetical, "relating to alien smuggling," in section 101(a)(43)(N) is language limiting the type of convictions under sections 274(a)(1)(A) and (2) that may be regarded as an aggravated felony. Rather, we find that the parenthetical is merely descriptive. A reading of section 101(a)(43)(N) in its entirety supports this conclusion. Section 101(a)(43) references a number of statutes that are outside the Immigration and Nationality Act. These include provisions contained in titles 18, 26, and 50 of the United States Code. Instead of requiring the reader to examine the referenced title and section of the code, subparagraphs (D), (E), (H), (I), (J), (K), (L), (M), and (P) of section 101(a)(43) include parentheticals which provide a shorthand description of the referenced criminal offenses.

Likewise, the parenthetical in subparagraph (N) advises that section 274 of the Act contains the criminal prohibitions relating to alien smuggling. Even though the phrase "smuggling" does not appear in section 274, this provision is designed to combat the phenomenon of smuggling by criminalizing the broad scope of activities which enable aliens to enter or to remain in the United States illegally. *See United States v. Sanchez-Vargas*, 878 F.2d 1163 (9th Cir. 1989) (examining legislative history of section 274(a) and concluding that by broadening the scope of proscribed conduct in section 274(a) over the last century, Congress expressed a continuing intent to strengthen federal anti-smuggling laws). We thus find that the parenthetical found in subparagraph (N) provides the reader accurate guidance as to the nature and extent of the offenses referenced. This parenthetical no more limits the range of convictions under sections 274(a)(1)(A) and (2) to be considered an aggravated felony than the phrase "relating to child pornography" in section 101(a)(43)(I) limits the scope of applicable convictions under 18 U.S.C. §§ 2251, 2251A or 2252, or the phrase "relating to gambling offenses" in section 101(a)(43)(J) limits the scope of applicable convictions under 18 U.S.C. § 1955. In the case of subparagraph (I), for example, the referenced criminal provisions, none of which include the

term "child pornography," nevertheless cover the broad scope of activities relating to the production, distribution, receipt, and facilitation of sexually explicit materials involving minors. The parenthetical phrase does not limit the range of such offenses that may be regarded as an aggravated felony; it simply provides a generic point of reference.

We also decline to accept the respondent's argument that the scope of offenses described in sections 274(a)(1)(A) or (2) of the Act, which Congress has plainly designated as aggravated felonies, is in any way limited by the scope of activities which are considered to support the grounds for exclusion or deportation under sections 212(a)(6)(E)(i) and 241(a)(1)(E)(i) of the Act, 8 U.S.C. §§ 1182(a)(6)(E)(i) and 1251(a)(1)(E)(i) (1994).[1] Had Congress intended to so limit the scope of section 101(a)(43)(N), it clearly could have cross-referenced the applicable provisions in sections 212 and 241. In addition, the respondent misapprehends the fundamental distinctions between the grounds for exclusion and deportation, which do not require a criminal conviction, and the provisions of sections 274(a)(1)(A) and (2), which are among the few provisions in the Act that set forth the elements of a prosecutable criminal offense. *See also* sections 274A(f), 275, 276, 277, 278 of the Act, 8 U.S.C. §§ 1324a(f), 1325, 1326, 1327, 1328 (1994 & Supp. II 1996). The use of nonsubstantive headings such as "smugglers" and "smuggling" in sections 212(a)(6)(E)(i) and 241(a)(1)(E)(i) does not signify that the substantive provisions that follow describe the full extent of those activities that may be regarded as "alien smuggling" or "related to alien smuggling." Rather, these substantive provisions describe the smuggling activities that will suffice, even in the absence of a criminal conviction, to exclude or deport an alien from the United States.

An examination of the procedural history of section 101(a)(43)(N) of the Act also supports the proposition that Congress intended criminal aliens convicted under the provisions of sections 274(a)(1)(A) and (2) of the Act to be subject to deportation under section 241(a)(2)(A)(iii). Initially, we note that section 101(a)(43)(N) was introduced to the definition of aggravated felony by section 222(a) of the Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, 108 Stat. 4305, 4320-22. It originally provided that "an offense described in section 274(a)(1) of title 18, United States Code (relating to alien smuggling) for

---

[1]Section 212(a)(6)(E)(i) of the Act provides that "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is excludable."

Section 241(a)(1)(E)(i) of the Act provides that "[a]ny alien who (prior to the date of entry, at the time of entry, or within 5 years of the date of any entry) knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is deportable."

the purpose of commercial advantage" was an aggravated felony. However, since there is no section 274 in title 18, it appears that Congress intended section 274 of title 8, the United States Code, which contains the Immigration and Nationality Act.

Nevertheless, section 440(e) of the AEDPA, 110 Stat. at 1277-78, expressly added alien smuggling activities under section 274(a) to the definition of an aggravated felony. In this regard, the AEDPA eliminated the reference to title 18 and the phrase "for the purpose of commercial advantage," and it added a requirement of a term of imprisonment.[2] *See* AEDPA § 440(e). Shortly thereafter, however, Congress again amended section 101(a)(43)(N) by removing the term of imprisonment requirement, and including an affirmative defense for those aliens who committed the offense for the purpose of assisting, abetting, or aiding their spouse, child, or parent to violate a provision of the Act. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 321(a)(8), 110 Stat. 3009-546, 3009-628 ("IIRIRA").

Thus, since its introduction to the aggravated felony definition, section 101(a)(43)(N) has included all the actions which will incur criminal penalties under sections 274(a)(1)(A) and (2) of the Act, as amended. The removal of the "for commercial advantage" requirement and a term of imprisonment reflects congressional intent to expand the class of offenders subject to penalty under the immigration laws. Yet, Congress continued to provide a waiver for first offense convictions under sections 274(a)(1)(A) or (2) where the offense involved specific family members.

Further, we find unpersuasive the respondent's reliance on our holding in *Matter of I-M-*, 7 I&N Dec. 389 (BIA 1957), to support the argument that his conviction does not establish his deportability. In that case, we found that a conviction for transporting an illegal alien was not a deportable offense under former section 241(a)(13) of the Act, 8 U.S.C. § 1251(a)(13) (1952).[3] In reaching our holding, we concluded that it was the intention of Congress to make transportation of an alien a criminal offense, but not a deportable offense. *Id.* at 391. However, this finding was rendered prior to the introduction of the aggravated felony definition and ground of deportability. Since a criminal offense described in sections 274(a)(1)(A) and (2)

---

[2]After enactment of the AEDPA, section 101(a)(43)(N) of the Act defined an aggravated felony as "an offense described in paragraph (1)(A) or (2) of section 274(a) (relating to alien smuggling) for which the term of imprisonment imposed (regardless of any suspension of imprisonment) is at least 5 years."

[3]Former section 241(a)(13) of the Act provided that an alien shall be deported if "prior to, or at the time of any entry, or at any time within five years after any entry, shall have, knowingly and for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law."

has been explicitly designated as an aggravated felony, and hence as a deportable offense, we find that our holding in *Matter of I-M-*, *supra*, does not support the respondent's argument that a conviction for transporting an illegal alien in violation of section 274(a)(1)(A)(ii) is not a deportable offense under section 241(a)(2)(A)(iii) of the Act.

Federal case law finding that the transportation or harboring of illegal entrants does not provide grounds for exclusion or deportation under sections 212(a)(6)(E)(i) or 241(a)(1)(E)(i) is also not dispositive of the issue of deportability under section 241(a)(2)(A)(iii) of the Act. *See Rodriguez-Gutierrez v. INS*, 59 F.3d 504, 509 n.3 (5th Cir. 1995) (holding that a conviction for transporting illegal aliens, rather than for aiding and abetting an entry, does not support a finding of excludability under section 212(a)(6)(E)); *cf. Lopez-Blanco v. INS*, 302 F.2d 553 (7th Cir. 1962) (holding that transportation of an illegal alien into the United States, as opposed to within the United States, supports a finding of deportability under former section 241(a)(13) of the Act). Again, these cases did not involve aliens who were charged with deportability as an alien convicted of an aggravated felony.

Accordingly, we find that a conviction for transporting an illegal alien in violation of section 274(a)(1)(A)(ii) of the Act is an aggravated felony, as defined in section 101(a)(43)(N) of the Act, and, therefore, it supports a finding of deportability under section 241(a)(2)(A)(iii) of the Act. We thus find that the Immigration Judge properly denied the respondent's motion to terminate.

## IV. DEPORTABILITY

In deportation proceedings the Service bears the burden to establish deportability by evidence which is clear, unequivocal, and convincing. *See Woodby v. INS*, 385 U.S. 276 (1966); 8 C.F.R. § 240.46(a) (1998). In finding that the Service had satisfied its burden of establishing deportability, the Immigration Judge considered the judgment and indictment. Both of these documents are part of the record of conviction and were properly relied upon by the Immigration Judge. *Matter of Rodriguez-Cortes*, 20 I&N Dec. 587 (BIA 1992); 8 C.F.R. § 3.41 (1998). Thus, we find no merit to the respondent's arguments on appeal that the Immigration Judge erred in admitting these documents over his objections.

## V. SUMMARY

In sum, we find that a conviction for transporting an illegal alien in violation of section 274(a)(1)(A)(ii) of the Act is an aggravated felony, as

defined in section 101(a)(43)(N), and therefore supports a finding of deportability under section 241(a)(2)(A)(iii) of the Act. The motion to terminate deportation proceedings was properly denied by the Immigration Judge. Moreover, we find that the record of conviction submitted by the Service establishes the respondent's deportability by clear, unequivocal, and convincing evidence. Finally, since there is no indication in the record that the respondent is statutorily eligible for any form of relief from deportation, we affirm the Immigration Judge's order of deportation to Mexico.

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

Board Member Anthony C. Moscato did not participate in the decision in this case.

*CONCURRING OPINION:* Gustavo D. Villageliu, Board Member

I respectfully concur.

I concur in the result in this case but disagree with its reasoning. The respondent may be deportable as charged as an aggravated felon. However, I respectfully disagree with the majority's reasoning that the words, "relating to alien smuggling," in section 101(a)(43)(N) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(N) (Supp. II 1996), are merely descriptive and perform no limiting function. The words "relating to alien smuggling" imply a nexus to aliens being smuggled into the United States which narrows the class of aliens described therein. This implication is reinforced by the language of section 274(a)(2)(B) of the Act, 8 U.S.C. § 1324(a)(2)(B) (1994 & Supp. II 1996), and the legislative history of its amendment by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 (enacted Sept. 30, 1996) ("IIRIRA"), as discussed below.

The respondent was convicted in the United States District Court for the District of New Mexico on August 12, 1996, of violating section 274(a)(1)(A)(ii) of the Act, 8 U.S.C. § 1324(a)(1)(A)(ii) (1994), for knowingly transporting an alien illegally here in furtherance of the illegal presence.[1]  I therefore do not disagree with the majority that the respondent may be deportable as an alien convicted of an aggravated felony pursuant to sec-

---

[1]The majority's opinion disregards this important limiting language in the text of section 274(a)(1)(A)(ii), as in effect prior to April 1, 1997, the effective date of the amendments prescribed by the IIRIRA. For a more thorough understanding of section 274(a), both before and after its amendments by the IIRIRA, and how the two versions relate to the requisite nexus to an actual smuggling of aliens, it is necessary to examine both the language and structure of the two versions of that section.

tion 101(a)(43)(N) of the Act, as amended by section 321(a)(8) of the IIRI-RA, 110 Stat. 3009-628, which defines an aggravated felony as an offense described in section 274(a)(1)(A) or (2) (relating to alien smuggling), with a limited exception not pertinent here (first offenders smuggling their spouse, child, or parent.) I also agree with the majority that deportability based on section 101(a)(43)(N) encompasses "the broad scope of activities which enable aliens to enter or to remain in the United States illegally." *Matter of Ruiz-Romero*, 21 I&N Dec. 3376, at 5 (BIA 1999). This includes transporting the smuggled aliens after they have entered, knowing their illegal status, and in furtherance of their illegal presence.

However, I disagree with the majority's reasoning that, in dictum, suggests that any alien convicted of violating section 274(a) of the Act would similarly be deportable as an aggravated felon, even if the conviction had no nexus to an actual alien smuggling. The majority's opinion does not address the fact that one of the elements required for a conviction under section 274(a)(i)(A)(ii), both before and after its amendment by the IIRIRA, is that the transportation be "in furtherance of such violation of law," namely, the illegal entry.

The four pre-IIRIRA parts of section 274(a)(1)(A) of the Act cited by the majority in its opinion clearly reflect a dichotomy based on whether there is an actual nexus to alien smuggling. Section 274(a)(1)(A)(ii), under which the respondent in this case was convicted, required for a conviction a "knowing or . . . reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law" and also required that the defendant's actions be "in furtherance of such violation of law." Similarly, section 274(a)(i)(A)(iii), 8 U.S.C. § 1324(a)(1)(A)(iii) (Supp. II 1996), speaks of concealing, harboring, and shielding from detention such aliens. Finally, section 274(a)(1)(A)(i) specifically addressed those who brought such an alien to "a place other than a designated port of entry." This latter violation incurs the most substantial penalty, prescribed under section 274(a)(1)(B)(i), of a fine and imprisonment for no more than 10 years. In contrast, section 274(a)(1)(A)(iv) only addresses aliens who induce or encourage aliens who enter the United States illegally. Penalties for violating sections 274(a)(1)(A)(ii), (iii), and (iv) are limited to a fine and imprisonment for no more than 5 years by section 274(a)(1)(B)(ii), unless the specified circumstances listed under sections 274(a)(1)(B) (iii) or (iv) (death, jeopardy to life, or serious bodily injury) are present.

Pursuant to the IIRIRA, the statute was amended to clarify it and to refine the penalties in ways consistent with the dichotomy based on a nexus to actual alien smuggling. *See* IIRIRA § 203, 110 Stat. at 3009-565. As amended, section 274(a)(2) has two parts and an introductory general provision. The general provision states that "[a]ny person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or

attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such an alien" commits an offense. Section 274(a)(2)(A) prescribes a fine in accordance with title 18 of the United States Code and/or imprisonment for not more than a year for violation of that general provision. However, section 274(a)(2)(B) provides for greater punishment for activities in violation of section 274(a)(2) with a nexus to alien smuggling. It prescribes a 3- to 15-year imprisonment term, depending on the circumstances, for persons convicted of a violation of section 274(a)(2) where the alien is brought to the United States to commit a felony, the offense is done for commercial advantage or gain, or the alien is not presented to an appropriate immigration officer at a designated port of entry.

Consequently, the majority's reasoning that the words in section 101(a)(43)(N) "relating to alien smuggling" are merely descriptive, and not limiting, is erroneous dictum as to those section 274(a)(2) convictions that do not involve the aggravating circumstances discussed in section 274(a)(2)(B). Under the majority's reasoning, any person convicted and fined under section 274(a)(2)(A) who brings to our border an unauthorized asylum-seeker without attempting to smuggle such alien may be deemed an aggravated felon even if such alien is subsequently granted asylum and there is no nexus to smuggling. Such a person, even if convicted under section 274(a)(2), is not a smuggler; and the asylum-seeker who openly presents himself at the border requesting admission as a refugee is not a smugglee.

The language of section 101(a)(43)(N) "relating to alien smuggling" is sufficiently broad to cover all activities which assist the smuggling operation, as the majority notes. However, the term "smuggling" necessarily implies secrecy and must somehow relate to an illicit entry by the smuggled alien.[2] A sufficient nexus to a surreptitious illegal entry or attempted entry must be present for deportability as an aggravated felon. The legislative history of section 101(a)(43)(N) is consistent with a definition that limits deportability based on that section to activities relating to an actual illicit and surreptitious entry into the United States. The

---

[2]The word "smuggle" means to bring in or take out illicitly or secretly. Section 208(a)(1) of the Act, 8 U.S.C. § 1158(a)(1) (Supp. II 1996), specifically states:

(1) IN GENERAL.—Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section, or, where applicable, section 235(b).

Consequently, the Act specifically contemplates aliens who had no prior authorization to come to the United States to be allowed to submit an application for asylum.

statute reflects an intent to specify different penalties for alien smuggling, inducement, harboring, and transportation prohibitions; provides penalties for employers of aliens brought to the United States in violation of section 274(a); provides further penalties for smuggling aliens with reason to believe such aliens may commit crimes here; and changes the standard for calculating penalties based on the number of aliens smuggled instead of the number of transactions involved. 142 Cong. Rec. H10,841-02 (1996). It clearly differentiates, for purposes of penalties, on the basis of a nexus to an actual smuggling activity.

Finally, the specific language of section 101(a)(43)(N) contains another indication of a limiting function relating to an actual smuggling. It provides an exception from deportability for an alien who committed the section 274(a) violation and "has affirmatively shown that the alien committed the offense for the purpose of *assisting, abetting, or aiding* only the alien's spouse, child, or parent (and no other individual) to violate a provision of this Act." (Emphasis added.) Under the majority's reasoning and the principle of "expressio unius est exclusio alterius," an alien convicted of a section 274(a) violation who did not have the purpose of assisting, abetting, or aiding a violation of this Act, but rather intended only to present his spouse, child, or parent for inspection in accordance with section 208(a)(1) of the Act, 8 U.S.C. § 1158(a)(1) (Supp. II 1996), in order to apply for asylum, would not benefit from this exception. *See* 2A N. Singer, *Sutherland Statutory Construction* § 47.23, at 194 (4th ed. 1985).

It would be absurd to interpret the statute so as to provide an exception from deportability to an alien who smuggles a qualifying close relative surreptitiously and deny the exception to a similarly situated alien presenting his qualifying, but unauthorized to enter, close relative for inspection. It is a well-settled rule of statutory interpretation that absurd results due to unreasonable interpretations of the statute should be avoided. *See* Singer, *supra*, § 45.12, at 54-55. Consequently, I disagree with the majority's reasoning insofar as it implies, in dictum, that an alien who aids a refugee to come to the United States and apply for asylum openly, by presenting such refugee before the appropriate authorities, may be considered an aggravated felon if convicted of violating section 274(a)(2) of the Act because the refugee had not been previously authorized to come to the United States.

*DISSENTING OPINION:* Lory Diana Rosenberg, Board Member, in which Fred W. Vacca, Board Member, joined

I respectfully dissent.

By its decision, the majority finds, in essence, that transporting or facilitating the movement of an "alien" who is within the borders of the

United States from one place to another necessarily constitutes smuggling. I disagree.[1]

It goes without saying that we are addressing a conviction that is, first, a conviction, for which criminal penalties are imposed, and second, a conviction in relation to which immigration consequences attach. However, excessive as the list of convictions designated as aggravated felonies may be, not every conviction is an aggravated felony. Yet.

The majority focuses on the parenthetical phrase, "related to alien smuggling," in section 101(a)(43)(N) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(N) (Supp. II 1996), as though it was a license to treat every offense under sections 274(a)(1)(A) or (2) of the Act, 8 U.S.C. §§ 1324(a)(1)(A) or (2) (1994), as an offense "relating to alien smuggling," and thereby to characterize every offense under those subsections of section 274(a) as an aggravated felony. But if that were the case, the parenthetical language would be surplusage, because section 101(a)(43)(N) very clearly refers to offenses "described in paragraph (1)(A) or (2) of section 274(a)." The language of section 274(a) is plain; it articulates clearly a list of offenses and needs no parenthetical modification to "provide[] the reader accurate guidance as to the nature and extent of the offenses referenced." *Matter of Ruiz-Romero*, 21 I&N Dec. 486, at 489 (BIA 1998).

In my opinion, the parenthetical language is not "*merely* descriptive." *Id.* (emphasis added). It is descriptive in a narrowing sense, focusing the reader's attention on a subgroup of offenses covered by section 274(a) that Congress deemed to constitute offenses that qualified for categorization as aggravated felony convictions. This conclusion is supported by several principles of statutory construction that we are bound to follow, including the rule of lenity.


I. ISSUE PRESENTED


The issue presented by this appeal is whether a conviction for transporting an unadmitted or out of status alien within the United States in violation of section 274(a)(1)(A)(ii) of the Act renders the respondent deportable under section 241(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1251(a)(2)(A)(iii) (1994), as an alien convicted of an aggravated felony. This requires us to interpret the language of section 101(a)(43)(N) of the Act, which includes in the statutory definition of aggravated felony,

---

[1]I also disagree with the concurring opinion of Board Member Villageliu, who I believe has misread the record with regard to whether the respondent's conviction had anything to do with smuggling.

> *an offense* described in paragraph (1)(A) or (2) of section 274(a) *(relating to alien smuggling)*, except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this Act.

(Emphasis added.)

The real question before us is not whether the language "relating to alien smuggling" that follows the statutory citation referring to section 274(a) of the Act is descriptive. *Cf. Matter of Ruiz-Romero, supra*, at 488. The parenthetical phrase certainly is descriptive, but to say that it is descriptive of offenses under section 274(a) begs the question. The question is: What does it describe? Is it merely descriptive of every offense under section 274(a), providing an arguably redundant categorical label for subsections listed in section 101(a)(43)(N)? Or, is it descriptive only of offenses under section 274(a) that can be said to be "related to smuggling," as that term is described in common usage and elsewhere in the statute?

## II. APPLICATION OF PRINCIPLES OF STATUTORY CONSTRUCTION TO THE PHRASE "RELATING TO ALIEN SMUGGLING"

As the administrative agency charged with interpreting and applying the statute, we are bound by the language Congress has enacted. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). Where Congress' intent is not plainly expressed, or subject to an ordinary meaning, we are to determine a reasonable interpretation of the language that effectuates Congress' intent. *Id.* at 843. Application of accepted principles of statutory construction to the phrase "relating to alien smuggling" limits the reach of section 101(a)(43)(N) to certain convictions under sections 274(a)(1)(A) and (2) of the Act.

Sections 274(a)(1)(A) and (2) of the Act, 8 U.S.C. §§ 1324(a)(1)(A) and (2) (Supp. II 1996), now include seven different criminal offenses for which a violator may be penalized, each of which contains different elements. Entitled "Bringing In and Harboring Certain Aliens," and subtitled "Criminal Penalties," section 274(a)(1)(A) contains six forms of conduct for which an individual may be convicted. This conduct may be paraphrased as: (i) *knowing* a person is an alien, *bringing or attempting to bring* that person across the border other than at a designated port of entry; (ii) *knowing or in reckless disregard* of an alien's having come to, entered, or remained in the United States in violation of law, *transporting or moving* (or attempting to transport or move) that person within the United States *in furtherance* of the alien's violation of law; (iii) *knowing or in reckless dis-*

*regard* of an alien's having come to, entered, or remained in the United States in violation of law, *concealing, harboring, or shielding from detection* (or attempting to conceal, harbor, or shield from detection) that person within the United States; (iv) *encouraging or inducing an alien to come to, enter, or reside in* the United States; (v)(I) engaging in conspiracy to engage in any of the preceding acts; and (v)(II) aiding and abetting the commission of any of the preceding acts. Section 274(a)(2) refers to a seventh type of conduct that is subject to criminal penalties—*knowing or in reckless disregard* of the absence of prior official authorization, *bringing in* an alien, regardless of any official action that is taken later with respect to the alien.

For our purposes, the question is whether or not the respondent is deportable as charged based on the respondent's criminal conviction or any other evidence he engaged in smuggling. We must determine whether the activity for which the respondent was convicted—transporting—is a violation "relating to alien smuggling."  *See* section 101(a)(43)(N) of the Act. The criminal provisions contained in sections 274(a)(1)(A) and (2) cover bringing or attempting to bring across the border unlawfully; transporting or moving *in furtherance of the alien's violation of law*; concealing, harboring, or shielding a person who is unlawfully present from detection; and encouraging or inducing to come, enter, or reside in the United States. In my view, given the breadth of activity covered by sections 274(a)(1)(A) and (2), the language of section 101(a)(43)(N), referring to actions "relating to alien *smuggling*," is limiting language that modifies the reference to the subsections of section 274(a).

## A. Plain Meaning of the Statutory Language

Our interpretation of the statute is governed by settled principles of statutory construction. First, we must look to the actual language used in the statute. It is well settled that the """"starting point must be the language employed by Congress"'" and the court must 'assume "that the legislative purpose is expressed by the ordinary meaning of the words used."'" *INS v. Phinpathya*, 464 U.S. 183, 189 (1984) (quoting *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337 (1979), and *Richards v. United States*, 369 U.S. 1, 9 (1962))); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).[2]  Second, we

---

[2]The strong presumption that the plain language of the statute expresses congressional intent is rebutted in "rare and exceptional circumstances" when a contrary legislative intent is clearly expressed. *Rubin v. United States*, 449 U.S. 424, 430 (1981); *INS v. Cardoza-Fonseca, supra*, at 432 n.12. This case does not present one of those rare circumstances. On the contrary, here the legislative history is in complete accord with my reading of the plain language of section 101(a)(43)(N). *See, e.g.*, H.R. Conf. Rep. No. 104-469(I) (1996), *available in* 1996 WL 168955; H.R. Conf. Rep. No. 104-828 (1996), *available in* 1996 WL 563320. For exam-

must look to the language and design of the statute as a whole. *K Mart Corporation v. Cartier, Inc.*, 486 U.S. 281, 291 (1987); *see also COIT Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561 (1989); *Matter of W-F-*, 21 I&N Dec. 503 (BIA 1996). Third, we must "give effect, if possible, to every clause and word of a statute." *Inhabitants of Montclair v. Ramsdell,* 107 U.S. 147, 152 (1883); *see also Kungys v. United States*, 485 U.S. 759 (1988); *United States v. Menasche*, 348 U.S. 528, 538-39 (1955). The United States Court of Appeals for the Fifth Circuit, the circuit in which this case arises, has held that "we follow the plain meaning of the statute unless it would lead to a result 'so bizarre that Congress "could not have intended" it'." *Johnson v. Sawyer*, 120 F.3d 1307, 1319 (5th Cir. 1997) (quoting *Demarest v. Manspeaker*, 498 U.S. 184, 191 (1991) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982))).

## 1. Definition of "smuggling" and "transporting"

The phrase "related to smuggling" refers plainly to offenses within section 274(a) that involve "smuggling." Smuggling is defined in popular usage as follows: "1. To import or export without paying lawful customs charges. . . [or] 2. To bring in or take out illicitly or secretly." *Webster's II New Riverside University Dictionary* 1099 (1994). The term "smuggle" has a well-understood meaning at common law, signifying a bringing on shore, or carrying from shore, of good wares and merchandise for which the duty has not been paid or goods the importation or exportation whereof is pro-

___

ple, the legislative history of section 203 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-565 ("IIRIRA"), which increased the penalties under section 274(a)(1)(B)(i), makes clear that bringing in aliens, transporting them or harboring them are separate offenses and suggests that the term "alien smuggling" only relates to section 274(a)(1)(A)(i). It addresses an amendment of section 274(a)(1) "providing that a person who engages in a conspiracy to commit or aids and abets in the *commission of offenses under section 274(a)(1)(A) shall be fined and imprisoned for up to 10 years (alien smuggling)* or up to 5 years (transportation, harboring, inducement)." H.R. Conf. Rep. No. 104-469(I), at 608 (1996). In addition, Congress also uses the term "alien smuggling" to differentiate a conviction for that activity from convictions for other activity covered under section 274(a), directing the promulgation of "(e)(1) . . . sentencing guidelines . . . for offenders convicted of offenses related to smuggling, transporting, harboring *or* inducing aliens in violation of section 274(a)(1)(A) or (2)." H.R. Conf. Rep. No. 104-828, at 20 (1996) (emphasis added). The use of the conjunctive "or" in the legislative history further establishes that "related to smuggling" is not the same as "related to transporting," "related to harboring," or "related to inducing aliens in violation of section 274(a)(1)(A) or (2)." *See Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975) (finding that "use of a disjunctive in a statute indicates alternatives and requires that they be treated separately").

hibited. *Williamson v. United States of America*, 310 F.2d 192 (9th Cir. 1962); *see also Black's Law Dictionary* 1389 (6th ed. 1990).

Although the specific term "smuggling" does not appear in section 274(a), it is used and may be defined by its usage in other sections of the Act. *See* sections 212(a)(6)(E), 237(a)(1)(E) of the Act, 8 U.S.C. §§ 1182(a)(6)(E), 1227(a)(1)(E) (Supp. II 1996) (entitled "Smugglers" and "Smuggling" respectively). In articulating a ground of deportability for smuggling, the statute provides that "[a]ny alien who (prior to the date of entry, at the time of any entry, or within 5 years of the date of any entry) has encouraged, induced, assisted, abetted, or aided any other alien *to enter or to try to enter* the United States in violation of law is deportable." Section 237(a)(1)(E)(i) of the Act (emphasis added).[3] It is important to note that the conduct defined in the inadmissibility and deportability grounds covers encouraging, inducing, assisting, abetting, and aiding, and equally important to note that the action so encouraged, induced, assisted, abetted, or aided is entry or attempted entry to the United States.

This specific definition of "smuggling" is significant. When identical words are used in the same statute, they mean the same thing. 2A N. Singer, *Sutherland Statutory Construction* § 46.06, at 164 (4th ed. 1984); 73 Am. Jur. 2d § 232; *Boise Cascade Corporation v. United States EPA*, 942 F.2d 1427, 1431 (9th Cir. 1991). It is not only appropriate, but necessary, that in determining the meaning of "related to alien smuggling" in section 101(a)(43)(N), we consider the word "smuggling" as used in other sections of the Act.

By contrast, the word "transport" means "[t]o convey from one place to another." *Webster's II New Riverside University Dictionary* 1228 (1994); *see also Sacramento Naval Co. v. Salz*, 273 U.S. 326 (1927); *Black's Law Dictionary* 1499 (6th ed. 1990). In contrast to the offenses that categorically relate to alien smuggling, the crime of transporting (or that of harboring, or encouraging or inducing) does not necessarily relate to alien smuggling as defined in popular or common law usage, or in the immigration statute itself. The crime of transporting has distinct elements which do not involve the secret, illicit, or unlawful importing or "bringing in" of an alien, or inducing him to enter in violation of law. The transporting offense in section 274(a) covers the actions of an individual who,

> knowing or in reckless disregard of the fact that an alien *has come to, entered*, or *remains* in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

Section 274(a)(1)(A)(ii) (emphasis added).

---

[3]The deportation ground contains a temporal limitation on this conduct in relation to the date of the alien's entry into the United States, while the inadmissibility ground is not so limited.

These elements pertain to an alien already in the United States, and the scope of the section includes not only an alien who has entered or come to this country unlawfully, but one who may well have been admitted lawfully but remained in violation of law. It is clear from the text and title that both section 237(a)(1)(E) and section 212(a)(6)(E) deal specifically and exclusively with alien smuggling. By contrast, section 274(a) is entitled "Bringing In or Harboring Certain Aliens" and covers a broad variety of forms of conduct that extends beyond merely alien smuggling as described in sections 237(a)(1)(E) and 212(a)(6)(E) of the Act. The parenthetical phrase in section 101(a)(43)(N), "relating to alien smuggling," should be read as a modifying phrase that refers to those portions of section 274(a)(1)(A) and (2) that refer to conduct that is consistent with the act of alien smuggling as defined in the afore-cited sections.

Moreover, section 101(a)(43)(N) of the Act contains an exception identical to that found in the grounds of inadmissibility and deportability pertaining to smuggling. I note that this waiver is not available for lesser offenses that occur after an alien has been smuggled in or has entered illegally, such as harboring or transporting. I find the fact that Congress specifically included the very same waiver in the aggravated felony ground referring to offenses "relating to alien smuggling," which was provided originally under two sections entitled "Smuggling" and "Smugglers," to constitute a very forceful argument in support of the conclusion that Congress contemplated sections 101(a)(43)(N), 237(a)(1)(E), and 212(a)(6)(E) to be interpreted coextensively. Since the immigration laws always have penalized alien smuggling much more severely than transporting, it is logical that the ground of inadmissibility or deportability for alien smuggling would contain a waiver, while other offenses under sections 274(a)(1) and (2) would not need to include one.

## 2. Interpretation of "relating to"

Although the density and complexity of the Act has been subjected to literary and mythological analogy, *see, e.g., Lok v. INS*, 548 F.2d 37 (2d Cir. 1977) (likening the immigration laws to King Minos' labyrinth in ancient Crete), this is not a Lewis Carroll story and we are not in Wonderland. Transporting, *after* an alien *enters*, *comes to*, or remains unlawfully, is transporting *after* a smuggling incident occurred, if one occurred at all. As the Fifth Circuit has recognized, transporting is a separate offense found in a separate subsection, which is distinguished by a description distinct from that which describes either the act of illicitly bringing in, or encouraging or inducing the unlawful and unauthorized entry of an alien. *See Rodriguez-Gutierrez v. INS*, 59 F.3d 504, 509-10, n.3 (5th Cir. 1995) (finding that the government misapplies the grounds of inadmissibility for having "knowingly encouraged, induced, assisted,

abetted, or aided any other alien *to enter or try to enter* the United States in violation of law," to the respondent, who was "*convicted for transporting illegal aliens rather than for aiding and abetting an entry*" (emphasis added)). It is not smuggling, and it is not necessarily an offense relating to alien smuggling. A reference to portions of a statute "relating to alien smuggling" must refer to those portions that are related to alien smuggling. Section 101(a)(43)(N) of the Act.

The phrase "relating to" is a term of art. *See Matter of Beltran*, 20 I&N Dec. 521, 526 (BIA 1992) (interpreting the phrase "relating to" in relation to whether an offense was a choate or inchoate crime, i.e., whether or not it was dependent on the principal controlled substance offense); *Matter of Hou*, 20 I&N Dec. 315 (BIA 1992) (discussing the phrase "relating to" in relation to attempted offenses and as the phrase has been used to qualify which offenses are covered under the deportation ground for controlled substance offenses), *superseded on other grounds, Matter of Saint John*, 21 I&N Dec. 593 (BIA 1996).

Our reasoning in these precedents supports the view that while certain preparatory offenses such as aiding and abetting or conspiracy to bring an alien to the country or encourage him to enter would be an offense "relating to alien smuggling," a crime like *transporting*, which is a separate and distinct criminal offense and has its own unique legal elements, is not necessarily one relating to alien *smuggling. Cf. Matter of Batista*, 21 I&N Dec. 955, at 961 (BIA 1997) (holding that conviction for the offense of accessory after the fact is not a crime related to a controlled substance, because it "has historically been treated as a crime separate and apart from the underlying crime," and "does not take its 'character and quality' from the underlying drug crime"); *Matter of Velasco*, 16 I&N Dec. 281 (BIA 1977) (holding that misprision of a felony is not same as the crime concealed because misprision is a separate and distinct crime and therefore is not a crime "relating to the illicit possession of . . . marihuana").

Although transporting may occur in relation to alien smuggling, such as when an alien is illicitly brought into the United States and then moved within the United States in furtherance of the alien's unlawful entry obtained through such smuggling, conviction for a transporting violation is not at all dependent on smuggling activity. In fact, as discussed below, a transporting violation depends only on knowledge that the alien transported, came to, entered, or remains in the United States unlawfully. Thus, generally speaking, as a both legal and a factual matter, "transporting" is not necessarily "related to alien smuggling." In particular, as discussed below, the absence of evidence in the record before us that the respondent was either convicted of or charged with an alien-smuggling offense, or that he was convicted of a transporting offense in which the elements of alien smuggling were charged or otherwise part of the record of conviction, also is a factor that militates strongly against finding him to have

503

been convicted of an offense "relating to alien smuggling."

### B. Effect of the Phrase "relating to alien smuggling"

As we presume that Congress has included every word for a purpose, we should shy away from any interpretation that would render any provision of a statute merely redundant. *Stephens v. Cherokee Nation*, 174 U.S. 445 (1899); *National Park Bank v. Remsen*, 158 U.S. 337 (1895); *Caha v. United States*, 152 U.S. 211 (1894). Given this analytical framework, the words "relating to alien smuggling" must be accorded some independent meaning. *Sutton v. United States*, 819 F.2d 1289, 1294 n.9 (5th Cir. 1987).

If the aggravated felony section of the statute encompassed all subsections of sections 274(a)(1)(A) and (2), there would have been no reason to include the words "relating to alien smuggling" in the statutory language. Statutes must be interpreted in a manner that gives effect to each word and does not render any provision of the same statute inconsistent, meaningless, or superfluous. *See Singer, supra*, §§46.05, 46.06, at 90-92, 105; *Aluminum Co. of America v. Bonneville Power Admin.*, 903 F.2d 585 (9th Cir. 1989), *cert denied sub nom. California Public Utilities Comm'n v. FERC*, 498 U.S. 1024 (1991). For practical purposes, the majority's conclusion that the respondent's conviction for transportation of aliens is, per se, "relating to alien smuggling" renders the parenthetical phrase meaningless by failing to afford it any independent meaning.

Under accepted rules of statutory construction, "parentheses indicate that the matter enclosed is in addition to, or in explanation of, the rest of the sentence." *Holmes Financial Assoc., Inc. v. Resolution Trust Corporation*, 33 F.3d 561, 567 (6th Cir. 1994). Thus, the parenthetical phrase, "relating to alien smuggling," provides an explanation or limitation of the text that refers to sections 274(a)(1)(A) and (2). *See Spartan Southwest, Inc. v. EEOC*, 461 F.2d 1055, 1057 (10th Cir. 1971) (stating that "the critical words appear [to] refer[] to alternatives . . . we . . . follow . . . as a proper interpretation of the statutory provision and . . . give effect to all of the language contained in it"). Thus, by limitation, some subsections of sections 274(a)(1)(A) and (2) relate to alien smuggling, while others do not.

Moreover, an examination of the background of section 101(a)(43)(N) of the Act supports the proposition that although Congress intended transporting illegal aliens to be a punishable offense, it did not intend this provision to describe a deportable offense. The "relating to alien smuggling" parenthetical was included in section 101(a)(43)(N) when it was introduced to the definition of aggravated felony by section 222(a) of the Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, 108 Stat. 4305, 4320-22. By including this limiting language, it is apparent that Congress did not wish to treat all criminal offenses described in section 274(a) as aggravated felonies—otherwise, as discussed below, there would

be no need to include the parenthetical language at all, since the language *without* the parenthetical would necessarily include all of the offenses listed in section 274(a)(1). Instead, only offenses relating to alien smuggling were to be classified as aggravated felonies and subject to the ground of deportability pursuant to section 241(a)(2)(A)(iii) of the Act.

## III. "RELATING TO ALIEN SMUGGLING" DOES NOT NECESSARILY ENCOMPASS THE OFFENSE OF "TRANSPORTING"

Section 274(a)(1)(A)(i) of the Act directly involves alien smuggling, as it penalizes the bringing in or attempting to bring in an alien at a place other than a designated port of entry. In addition, alien smuggling, as defined as a ground of inadmissibility or deportability, historically has involved the crimes of "aiding and abetting" the bringing of an alien into the United States. *See* sections 212(a)(6)(E), 237(a)(1)(E) of the Act; *Matter of I-M-*, 7 I&N Dec. 389 (BIA 1957); *see also* 6 Charles Gordon et al., *Immigration Law and Procedure* § 71.04(6), at 71-99 (rev. ed. 1998) (entitled "Smugglers of Aliens"). The other subsections of section 274(a), however, may or may not relate to alien smuggling depending on the circumstances of the offense for which the individual was convicted.

For example, section 274(a)(1)(A)(iv) penalizes a person who encourages or induces an alien to come to, enter, or reside in the United States knowingly or in reckless disregard of the fact that the alien's entry, coming to, or residence in the United States is in violation of law. Under this subsection, one who encourages or induces a person to come to or enter the United States engages in alien smuggling. *Carbajal-Gonzalez v. INS*, 78 F.3d 194 (5th Cir. 1996). Nevertheless, one who is convicted of encouraging or inducing an alien *to reside* in the United States may not have engaged in alien smuggling. *Cf. United States v. Oloyede*, 982 F.2d 133 (4th Cir. 1992). Thus, an individual who encourages or induces an alien *to reside* in the United States may not be subject to removal for a conviction "relating to alien smuggling" that is an aggravated felony under section 101(a)(43)(N) of the Act.

Likewise, a person who "engages in any conspiracy to commit any of the preceding acts," section 274(a)(1)(A)(v)(I) of the Act, or "aids or abets the commission of any of the preceding acts," section 274(a)(1)(A)(v)(II), may or may not have committed an offense relating to alien smuggling. If a person is convicted of conspiring to commit or aiding and abetting a violation of section 274(a)(1)(A)(i), he or she has been convicted of a crime relating to alien smuggling. Similarly, a person who conspires or aids and abets a person to violate section 274(a)(1)(A)(iv) may have committed a crime relating to alien smuggling, if he induces the person to enter or come to the United States. However, according to the definition of smuggling in

505

the statute, that person has not been convicted of a crime related to alien smuggling if he merely aids and abets or conspires to encourage or induce a person to reside in the United States. *Cf.* sections 212(a)(6)(E), 237(a)(1)(E) of the Act. Similarly, notwithstanding a conviction, such an individual has not necessarily engaged in an offense related to alien smuggling if he conspires to engage in, or aids and abets the transporting, concealing, or harboring of an alien.

### A. No Evidence the Respondent Was Convicted of an Offense "relating to alien smuggling" Under a Divisible Statute

There is no evidence in the record before us that the offense for which the respondent was convicted involved alien smuggling. The primary distinction between the offenses under section 274(a) that actually involve smuggling, and those that involve transporting in furtherance of a violation of law (or harboring, or encouraging, or inducing to reside), is that the latter offenses do not involve the actual bringing in or inducing the alien into entering the United States in violation of law. Alien smuggling involves the act of actually bringing in, or encouraging the alien to enter, or conduct that amounts to conspiring in, or aiding or abetting the accomplishment of these offenses. *United States v. Cantu*, 557 F.2d 1173, 1180 (5th Cir. 1977) (reflecting the understanding that section 274 includes activities that are not part of alien smuggling), *cert. denied*, 434 U.S. 1063 (1978); *United States v. DeEvans*, 531 F.2d. 428, 430 n.4 (9th Cir. 1976) (recognizing that harboring need not be part of the chain of transactions in smuggling), *cert. denied*, 429 U.S. 836 (1976). By contrast, a transporting offense can take place many miles from the border and a long time after the initial bringing in or encouraging the alien to enter the country. *United States v. Aguilar,* 883 F.2d 662, 667 (9th Cir. 1989) (involving a conviction for transporting aliens from Chicago to cities throughout the United States), *cert. denied,* 498 U.S. 1046 (1991).

Notably, the offenses of "transporting" and "harboring" not only encompass an individual's conduct in relation to a person who already has entered the United States, but cover his or her conduct in relation to a person who "*remains in*" the United States in violation of law. *See* sections 274(a)(1)(A)(ii), (iii) of the Act (emphasis added). Certainly, a conviction under either of these subsections need have nothing to do with "smuggling," which is conduct that entails secretly and illicitly "importing," "exporting," or "bringing in" an alien in violation of the law. *See, e.g., United States v. Merkt*, 764 F.2d 266, 269 (5th Cir. 1985) (finding no requirement that a nexus between the entry and the subsequent transporting be established).

As the consideration of these separate provisions demonstrate clearly, section 274 is a divisible statute, which encompasses violations that relate

to alien smuggling and those that do not. Demonstrating the separability of charges under section 274 related to actual smuggling, or the inducing or bringing in, of aliens, and other acts, such as transporting or harboring that occur once the alien is in the United States, the Fifth Circuit distinguished the Ninth Circuit case relied on by the majority, *United States v. Sanchez-Vargas*, 878 F.2d 1163 (9th Cir. 1989), in which the conduct constituting both smuggling and transporting was found to overlap. *See United States v. DeValle*, 894 F.2d 133 (5th Cir. 1990).

In *DeValle*, the court explained that "[t]he transporting is denounced by section 1324(a)(1)(B) and the harboring is separately denounced in section 1324(a)(1)(C). While it may well be that separate offenses cannot be made out by simply characterizing transporting as harboring, or vice versa, that is clearly not what was either charged or proved here." Thus, the Fifth Circuit recognizes that, unlike the situation in *United States v. Sanchez-Vargas, supra*, in which "the underlying criminal conduct consists of the singular act or transaction of driving an undocumented person across the United States-Mexico border," *id.* at 1167, so that the defendant, carrying the alien "necessarily committed the offenses of bringing in and transporting at virtually the same time and place," *id.* at 1171, it is possible for each substantive offense to consist of distinct conduct, to occur at separate times and places, and to be of a different character.

The Fifth Circuit's recognition of the clear distinctions between the subsections of section 274(a) demonstrates both the divisible nature of section 274(a), and the divisible nature of the transporting subsection itself. It is appropriate to treat section 274 as we would any other divisible statute under which a respondent was convicted. *Cf. Matter of Teixeira*, 21 I&N Dec. 316 (BIA 1996). Arguably, as transporting may involve both driving an alien over the border and into the United States, and transporting a person within the United States in furtherance of his violation of law after he has come to, entered, or remained in this country, the fact of a transporting conviction alone is inadequate to satisfy the Service's burden of proving that the respondent was convicted of a violation of sections 274(a)(1)(A) or (2), "relating to alien smuggling."

The burden is on the Service to prove the grounds of deportability by evidence that is clear, unequivocal, and convincing. *Woodby v. INS*, 385 U.S. 276 (1966); 8 C.F.R. 24.46(a) (1998). To prove that a transporting conviction is one "relating to alien smuggling," the Service would have to submit competent evidence in the record of conviction, indicating that the conduct for which the respondent was convicted was "relating to alien smuggling." *See Matter of Short*, 20 I&N Dec. 136, 137-38 (BIA 1989) (citing *Matter of Esfandiary*, 16 I&N Dec. 659, 661 (BIA 1979) (defining the "record of conviction" as including the indictment, plea, verdict and sentence)); *Matter of Mena*, 17 I&N Dec. 38 (BIA 1979) (considering a transcript of arraignment in which respondent pled guilty); *see also Matter of*

*Rodriguez-Cortez*, 20 I&N Dec. 587, 588 (BIA 1992) (including an "information" as part of the "record of conviction"). In the case before us, there is no evidence whatsoever that the respondent's conviction for transporting involved any conduct that could be deemed to be "relating to alien smuggling."

I conclude that the words "relating to alien smuggling" limit the aggravated felony definition to the two subsections—274(a)(1)(A)(i) and (a)(2)—that clearly involve alien smuggling, and under certain circumstances to the three subsections—274(a)(1)(A)(iv), (v)(I), and (v)(II)—that may involve alien smuggling. Instead of spelling out in a cumbersome, confusing, and complicated manner which of the seven subsections always relate to alien smuggling and which of the subsections only may relate depending on the circumstances, Congress chose to use the plain and ordinary words "relating to alien smuggling" to indicate and limit which of the many offenses under sections 274(a)(1)(A) and (2) are to be included in the definition of an aggravated felony under section 101(a)(43)(N).

## B. Agency and Federal Court Support for the Interpretation that the Statute is Divisible

The interpretation that Congress' original intention was to make transporting illegal aliens a punishable, but not necessarily a deportable, offense is supported by Board and circuit court decisions. The Board has specifically found that "it was the intention of Congress to make it a *criminal* offense, but not a deportable offense, to transport, conceal, *etc.,* under section 274 an alien illegally in the United States . . . ." *Matter of I-M-*, 7 I&N Dec. 389, 391 (BIA 1957). We have also found that an alien who was convicted of transporting illegal aliens was deportable because the evidence presented at his hearing proved that he had, in fact, arranged for their transportation while in Mexico and therefore had induced and assisted the aliens in illegally entering the United States. *Matter of Valdovinos*, 14 I&N Dec. 438, 439 (BIA 1973). The Fifth Circuit has recognized that an alien convicted of "transporting illegal aliens" is not excludable under section 212(a)(6)(E) of the Act, because that provision relates to alien *smuggling. Rodriguez-Gutierrez v. INS*, 59 F.3d 504, 510 n.3 (5th Cir. 1995). Finally, as noted above, although the Ninth Circuit has found that alien smuggling and transporting illegal aliens may be related if they involve the very same act (i.e., the defendant drove illegal aliens across the United States-Mexico border and continued driving, without stopping, in the United States), the Fifth Circuit has found that "transporting" and "harboring" illegal aliens are not duplicative, but constitute separate, distinct offenses. *Compare United States v. Sanchez-Vargas, supra, with United States v. DeValle, supra.*

I note, moreover, that section 101(a)(43)(N) has been amended twice by Congress since its inclusion in the Act. First, section 101(a)(43)(N) was

amended to read "paragraph (1)(A) or (2) of section 274(a)." Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 441(e), 110 Stat. 1214, 1277-78 ("AEDPA"). Section 101(a)(43)(N) was again amended by section 321(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 3009-546, 3009-628 ("IIRIRA"), which eliminated the requirement of the imposition of a 5-year sentence in order for the offense to constitute an aggravated felony, and added an exemption in the case of a first offense for smuggling one's own spouse, child, or parent. Therefore, both the AEDPA and IIRIRA substantively changed section 101(a)(43)(N), and yet, in neither instance did Congress amend the parenthetical to include transporting or harboring aliens, or simply omit the parenthetical altogether. In light of the fact that judicial decisions made prior to the enactment of the AEDPA and IIRIRA have interpreted "transporting illegal aliens" to be an offense separate and distinct from "alien smuggling," had Congress intended to further expand the definition of aggravated felony in this area, it is reasonable to assume that it would have also amended the parenthetical language.

This interpretation is bolstered by the fact that various authoritative treatises and articles that have addressed the issue have considered alien smuggling and transporting illegal aliens to be unrelated offenses. *See* 6 Gordon, *supra*, § 71.04[6], at 71-99 (stating that the "removal mandate . . . does not affect aliens who transported or harbored illegal entrants in the United States, unless they also aided in the unlawful entry"); Susan L. Pilcher, *Justice Without a Blindfold: Criminal Proceedings and the Alien Defendant*, 50 Ark. L. Rev. 269, 329 (1997) (noting that it is better to plead guilty to felony transporting alien charge than misdemeanor aiding and abetting illegal entry, which involves elements of deportability); Robert James McWhirter, *The Rings of Immigration Hell: The Immigration Consequences To Aliens Convicted of Crimes*, 10 Geo. Immigr. L.J. 169, 176 (1996) ("One possible way to avoid the aggravated felony definition is to plead to harboring or transporting aliens as this does not 'relate to alien smuggling.'"); Tarik H. Sultan, *Immigration Consequences of Criminal Convictions: A Guideline for the Criminal Defense Attorney*, 30-JUN Ariz Att'y 15, 28 (1994) (unlike misdemeanor aiding and abetting charge, felony transportation of illegal aliens not a prima facie ground of deportability, because defendant not assisting with illegal entry).

In *Matter of I-M-*, *supra*, we held that transportation of an alien within the United States did not render the respondent deportable under the alien smuggling provisions of the Act. The Board reversed the erroneous reasoning of the special inquiry officer, who had found that alien smuggling was encompassed under any of the four subdivisions of former section 274(a), holding that while Congress had criminalized wider conduct such as transporting or concealing aliens, the deportation statute did not encompass the offense of transporting. We concluded that without further proof that the

accused person was somehow involved in the scheme to facilitate the alien's entry, the offense of transporting did not involve alien smuggling. *Id.* at 391.

The majority's blithe rejection of the respondent's citation of this precedent invokes smoke and mirrors worthy of the "looking glass," to which I alluded not so obliquely in my earlier references to Lewis Carroll. The majority rejects that citation, along with federal circuit court rulings in accord with it, stating that it was a case "rendered prior to the introduction of the aggravated felony definition and ground of deportability." So? What kind of answer is that?

Is not the question we are addressing in this very opinion whether or not every offense under sections 274(a)(1)(A) and (2) is "relating to alien smuggling" under section 101(a)(43)(N) of the Act? Rather than answering the question, the majority states, circularly: The respondent's reliance on *Matter of I-M-*, *supra*, is unpersuasive, because transporting is smuggling, which is because the aggravated felony definition states that offenses under sections 274(A)(1)(A) and (2) are offenses relating to alien smuggling. Therefore, notwithstanding our precedent decision in *Matter of I-M-, supra*, holding that transporting is not smuggling, that precedent is meaningless because we are operating under a new statute that (notwithstanding that we are here in the process of attempting to interpret it) states that offenses relating to smuggling are smuggling offenses.

The majority apparently concludes that the aggravated felony definition somehow overrules or supersedes our holding that transportation is not smuggling because, despite it being the very issue before us, in the majority's view, a reference to alien smuggling encompasses and supersedes everything. Then they march right on to trample over federal court decisions, including one from the circuit in which this case arises, again invoking the amendment of the aggravated felony provisions as authority to ignore our precedent decision and the decisions of these courts of appeals because "these cases did not involve aliens who were charged . . . as an alien convicted of an aggravated felony." *Matter of Ruiz-Romero, supra*, at 492.

The authors, contributors, and proponents of the bills that expanded the aggravated felony provisions would do better to take stock of the human consequences being wrought by their excesses and the erroneous and unsupported interpretations the IIRIRA has wrought. However, at the very least, they and their supporters in the executive branch should, at a minimum, be true to the language of the legislation that has become law. Nothing in the law changes the distinction between transporting and bringing in or encouraging or inducing to enter the United States that we determined in our decision in *Matter of I-M-*, *supra*. The fact that a violation of section 274(a) relating to alien smuggling is an aggravated felony changes nothing about the question of what is smuggling and what is transporting. The language is fact. The rest is hysteria.

## C. The Rule of Lenity

The rule of lenity, or the principle that when any doubts exist as to the proper interpretation of the statute, we construe any ambiguity presented in favor of the alien, is a longstanding principle. *INS v. Cardoza-Fonseca, supra,* at 448; *INS v. Errico*, 385 U.S. 214, 225 (1966); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948); *Matter of Tiwari*, 19 I&N Dec. 875, 881 (BIA 1989). Despite the extensive amendments of the statute, this principle remains intact today. As I stated in my dissent in *Matter of N-J-B-*, 21 I&N Dec. 812 (BIA, A.G. 1997),

> Congress has not legislated away the long-accepted canon of construction that ambiguities in deportation statutes are to be construed in favor of the alien. And this is not an invitation to do so, as any such attempt would be likely to clash with the due process clause of the Fifth Amendment of the United States Constitution. . . . As a practical matter, it means that in deportation matters, when the law is less than clear, the benefit of the doubt goes to the noncitizen.

*Id.* at 38. Nevertheless, as I was forced to conclude then, and again, am forced to conclude now, "[I]n their opinion today, [the majority] communicate[s] the message that, after the IIRIRA, the benefit of the doubt has been turned on its head. Like Alice in *Through the Looking Glass*, what was the benefit of the doubt, now has become, the doubt that any alien should receive a benefit." *Id.*

## IV. CONCLUSION

The majority decision is wrong. It is contrary to the canons of statutory interpretation and contrary to our own precedent and federal court law. Consequently, I dissent.